**Ben Charles LAMBETH, Appellant**

**v.**

**The STATE of Texas, Appellee**

**NO. 09-15-00297-CR, NO. 09-15-00298-CR**

Court of Appeals of Texas, Beaumont.

Submitted on April 24, 2017

Opinion Delivered June 21, 2017

Erik P. Berglund, Conroe, TX, for Appellant.

Brett W. Ligon, District Attorney, Jason Larman, Assistant District Attorney, Conroe, TX, for Appellee.

Before McKeithen, C.J., Horton and Johnson, JJ.

## OPINION

HOLLIS HORTON, Justice

Ben Charles Lambeth appeals a judgment rendered following a jury trial in which he was found guilty of having engaged in the continuous sexual abuse of a child and of having committed an aggravated sexual assault against a child. *See* Tex. Penal Code Ann. §§ 21.02(b), 22.021(a)(1)(B)(v), (2)(B) (West Supp. 2016). The offenses were tried before the same jury. Lambeth received a thirty-year sentence for his conviction for continuous sexual abuse and a twenty-year sentence for his conviction for aggravated sexual assault. In addition to his prison sentence in the aggravated sexual assault case, the jury also found that Lambeth should pay a

$7,500 fine. After the trial court pronounced Lambeth's sentences, it ordered the sentences to be served concurrently.

Lambeth filed identical briefs in his appeals, and the briefs present two issues. In issue one, Lambeth argues the trial court erred by allowing a service dog [1] to sit in the witness box at the complaining witness's feet while the complaining witness testified during the guilt-innocence phase of his trial. In issue two, Lambeth contends the trial court should have excluded the testimony of his former step-daughter, who testified during his trial that Lambeth repeatedly sexually assaulted her while she was a minor and living in Lambeth's home. We overrule Lambeth's issues, and we affirm the judgments in Cause Number 13-11-12055 CR (Count I—continuous sexual abuse) and in Cause Number 13-11-12055 CR (Count II—aggravated sexual assault).

## Background

During Lambeth's trial, the State asked the trial court to allow the complaining witness, a minor, to use a service dog, positioned at her feet, in the witness box, and out of the jury's sight while she testified during the guilt-innocence phase of the trial. The State also advised the trial court that it intended to have a police officer, who worked with the service dog, place the dog in the witness box with the witness before the jury entered the courtroom. The State explained that the service dog would be removed from the witness box after the jury left the courtroom.

At the defendant's attorney's request, the trial court conducted a hearing regarding the State's proposal to allow the complaining witness to use a comfort item, in

this case, a service dog, while testifying. *See* Tex. Code Crim. Proc. Ann. art. 38.074, § 3(b) (West Supp. 2016) ("On the motion of any party, . . . the court shall allow the child to have a toy, blanket, or similar comforting item in the child's possession while testifying or allow a support person to be present in close proximity to the child during the child's testimony if the court finds by a preponderance of the evidence that: (1) the child cannot reliably testify without the possession of the item or presence of the support person, as applicable; and (2) granting the motion is not likely to prejudice the trier of fact in evaluating the child's testimony."). During the hearing, the trial court examined the complaining witness regarding whether the witness needed the service dog to sit with her while she testified. In questioning the witness, the trial court informed the witness that the law required the court to find that the witness's testimony would not be reliable unless the trial court allowed the service dog to sit with the witness while testifying. The trial court asked the complaining witness "will it make a significant difference to you if you have [the service dog] with you?" The complaining witness replied that having the service dog with her "would help me feel like there is someone there with me so I don't feel so alone, because I've been nervous about this for quite awhile." The trial court then pointed out that it needed to determine whether the complaining witness's testimony would be reliable based on using the dog, and asked: "[W]ill you be able to recall things and reliably answer questions more likely if you have that—if you have that dog with you?" The complaining witness replied that she would. The trial court found, by a

1. The record from the hearing the trial court conducted on whether to allow the dog to be present during the trial shows the dog is a yellow Labrador retriever named Ranger, and that the district attorney's office uses the dog to soothe and relax children who have been victims of crimes.

preponderance of the evidence, that to "ensure the reliability" of the complaining witness's testimony, the court would allow the witness to use the service dog while she testified.

The service dog was placed in the witness box at the complaining witness's feet before the jury heard the complaining witness's testimony, and before the jury entered the courtroom. At that point in the trial, and before the jury entered the courtroom, the trial court noted that "[t]he dog is at [the witness's] feet in the witness box, which is not visible—the dog is not visible in any way by the jury."

### Testifying With a Service Dog

In Lambeth's first issue, Lambeth advances two complaints about the witness's use of the service dog as a comfort item during his trial. First, Lambeth complains that during the hearing conducted on the proposal to use the dog, the trial court failed to make the express findings that he argues are required by article 38.074, section 3(b) to justify a trial court's decision to allow a witness to use a comfort item while testifying in a trial. *Id.* Nevertheless, the record shows the trial court did make several oral findings during the hearing on the proposal to use the service dog. For example, the trial court indicated during the hearing that the trial court did not believe the complaining witness's testimony would be sufficiently reliable unless the service dog was present. Additionally, the trial court expressly noted at the conclusion of the hearing and before the jury returned to the courtroom that the service dog was not visible. In our opinion, that finding indicates the trial court did not view the service dog's use as prejudicial. Given the various comments the trial court made together with the oral findings that it made during the hearing, it is apparent the trial court was aware of article 38.074's

requirements concerning the conditions that must be established to justify the use by a witness of a comfort item while testifying in a trial. *See* Tex. Code Crim. Proc. Ann. art. 38.074, § 3(b)(1), (2). Based on the trial court's oral findings in the hearing and its ruling, we imply the trial court made the findings required to support its ruling that allowed the dog to be in the witness box at the complaining witness's feet while she testified in the trial. *See generally State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (noting that if the trial court fails to make an express finding on an issue to resolve questions of disputed fact on a motion to suppress, the necessary findings will be inferred to support the ruling "if the record evidence (viewed in the light most favorable to the ruling) supports [the trial court's] implied fact findings").

We further note that Lambeth's attorney never asked the trial court to provide more specific findings than it made during the hearing that concerned the proposal to use the dog. *See* Tex. Code Crim. Proc. Ann. art. 38.074, § 3(b)(1), (2). To the extent that Lambeth argues that the trial court's findings failed to track the language in article 38.074, section 3(b), his complaints were not preserved for appellate review. Tex. R. App. P. 33.1(a) (preserving error for appellate review requires the complaining party to show that he presented his complaint to the trial court in a timely request, objection, or motion and that the trial court ruled on the request).

Lambeth also complains that the complaining witness's use of the dog as a comfort item while testifying was prejudicial. According to Lambeth, the measures undertaken to prevent the jury from learning of the service dog's presence were unsuccessful, and he asserts that when the complaining witness testified,

the service dog made sounds. Lambeth claims the sounds the dog made would have alerted the jury to the dog's presence, and that upon the jury's discovery that the complaining witness needed a dog while testifying, the jury would have necessarily concluded that Lambeth had inflicted a significant psychological injury on the complaining witness given the witness's need for the dog. Lambeth concludes that the jury would have been overly sympathetic with the complaining witness given the witness's need for the dog, and that the sympathy would have impaired the jury's ability to fairly evaluate the complaining witness's testimony.

From the cold record before us in the appeal, we are unable to determine what sounds the dog might have made in the courtroom that the jury might have heard. Nevertheless, at one point during the trial, the trial court briefly recessed the proceedings during the complaining witness's testimony to address Lambeth's complaint that the dog was making sounds. During the recess, Lambeth requested a mistrial. The trial court denied Lambeth's motion, but the trial court did not indicate whether the court agreed that the dog had made any audible sounds.

Even if we assume the jury was aware that the service dog was in the courtroom, we are not persuaded that the service dog's presence created any harm. *See* Tex. R. App. P. 44.2(b) (requiring that any error that does not affect a defendant's substantial rights to be disregarded). While Lambeth argues he was harmed because the jury would have inferred from the dog's presence that the complaining witness had a psychological injury, the record of the trial shows that Lambeth developed direct evidence from the complaining witness about the fact that the complaining witness was in therapy for the psychological problems she was suffering from having been sexually assaulted by Lambeth over a period of several years. Given evidence before the jury showing that the complaining witness was being treated for a psychological injury, and that the treatment related to the complaining witness's history of having been sexually abused, any inference the jury might have made connecting the complaining witness's psychological injury to Lambeth based on the presence of the dog would have been harmless. In summary, the inference that the complaining witness had a psychological injury based on the presence of the dog in the courtroom with the complaining witness was cumulative of more direct evidence establishing that Lambeth's sexual misconduct caused the complaining witness to suffer psychological problems. Because the evidence of the witness's psychological injury is cumulative of other more direct evidence showing that Lambeth's conduct caused the witness to suffer from a psychological injury, the alleged error in allowing the complaining witness to use the service dog was at most harmless error. *See generally Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (noting that "any error in admitting the evidence was harmless in light of other properly admitted evidence proving the same fact"); *Infante v. State*, 404 S.W.3d 656, 663 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding that error in admitting evidence is harmless when it is duplicative of other properly admitted evidence).

We hold the trial court did not abuse its discretion by allowing the complaining witness to use the service dog as a comfort item while testifying. *See Smith v. State*, 491 S.W.3d 864, 875-76 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (use of service dog was neither prejudicial nor harmful). And, even if we assume that allowing the service dog to be used was error, any error was harmless. We overrule issue one.

### Extraneous Offense Testimony

█ In issue two, Lambeth argues the trial court abused its discretion by allowing Beverly,[2] his former stepdaughter from one of his prior marriages, to testify that Lambeth had sexually abused her when she was a child. The trial court conducted a hearing before allowing the jury to hear Beverly's testimony to address whether there was sufficient evidence to show that Lambeth had sexually assaulted Beverly when Beverly lived in Lambeth's home. Beverly and two other witnesses testified during the hearing. At the conclusion of the hearing, the trial court ruled that there was sufficient evidence to allow the jury to conclude that Lambeth sexually assaulted Beverly. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2-a (West Supp. 2016) (requiring the trial court to make a preliminary determination following a hearing conducted outside the presence of the jury that the evidence about the extraneous offense would allow the jury to determine that the defendant committed the offense beyond reasonable doubt).

Before Beverly testified during Lambeth's trial, Lambeth objected that her testimony would be more prejudicial than probative because the indictment charged Lambeth with having sexually abused another child. *See* Tex. R. Evid. 403. Relying on Rule 403, Lambeth argues that Beverly's testimony was prejudicial and that the trial court abused its discretion by admitting it.

█ When performing a Rule 403 analysis, the trial court is required to engage in a balancing test by considering:

(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence

against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). Lambeth argues the State did not need Beverly's testimony because the State had evidence showing the complaining witness had undergone a medical examination, a forensic interview from the complaining witness, the testimony of a witness regarding the circumstances of one of the incidents of sexual assault committed against the complaining witness, and the benefit of the complaining witness's testimony describing Lambeth's conduct. However, Lambeth's trial included a count charging him with having continuously sexually abused the complaining witness. Additionally, except for the complaining witness's testimony to indicate that the assaults had been continuous, the State lacked other direct evidence of the continuous nature of these alleged assaults. Consequently, Beverly's testimony that Lambeth assaulted her over a number of years is circumstantial evidence that was probative of whether Lambeth is the type of person who would assault a minor over a long period of time. As such, the evidence tends to show Lambeth's character as someone who repeatedly abused the minor females who were living with him in his home. *See* Tex. Code

---

2. Because our constitution grants victims of crimes "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process," we use the pseudonym "Beverly" to identify this witness. Tex. Const. art. I, § 30.

Crim. Proc. Ann. art. 38.37, § 2(b) (West Supp. 2016).

Before admitting Beverly's testimony, the trial court conducted a thorough pretrial hearing regarding Beverly's claim that Lambeth had sexually assaulted her. When we compare the time it took for Beverly to explain the circumstances surrounding the assaults Lambeth perpetrated on her against the entirety of the evidence admitted in the guilt-innocence phase of the trial, Beverly's testimony represents a relatively small part of the overall testimony. In summary, the bulk of the testimony in the trial concerned the evidence and testimony that described the circumstances surrounding Lambeth's conduct toward the complaining witness.

Lambeth also argues that Beverly's testimony regarding the assaults lacked probative value and that her testimony affected the jury in an irrational way. He suggests that Beverly had a poor recollection of specifics regarding the alleged sexual assaults that she claimed that he committed against her. However, the hearing the trial court conducted to consider whether Beverly's testimony was admissible shows that Beverly recalled sufficient details about the alleged assaults to allow the trial court to decide that a jury could reasonably find, beyond reasonable doubt, that Lambeth had sexually assaulted Beverly on more than one occasion. For example, Beverly agreed that some of her memories were "fuzzy and hazy" during the pretrial hearing, but when asked whether her recollection was merely based on her belief about what happened or whether she actually remembered what happened, Beverly replied: "I do remember." While Beverly acknowledged that she did not remember all of the assaults, she also testified: "I do remember some of them." When asked if her memory improved with therapy, she stated, "I wouldn't say it got better; but it definitely, the older I got, the more I saw how wrong it was and understood that." Explaining why she did not remember everything, Beverly stated that she "blocked a lot out[;]" nonetheless, Beverly also explained that she remembers "the steps that he did; and as far as the actual action, I can't remember that part." Beverly indicated that she had clear memories of some of Lambeth's sexual acts, and she described some of the acts Lambeth perpetrated upon her in graphic detail. Additionally, Beverly denied that she had undergone hypnosis during any of her therapy sessions, and she explained that she had learned to do breathing exercises to prevent panic attacks. Finally, while Lambeth suggests that Beverly testified after having undergone repressed memory therapy, his suggestion is not supported by the record.

In this case, the evidence relating to Lambeth's assaults against Beverly were admissible to show that the sexual acts he committed against the complaining witness were acts consistent with Lambeth's character for taking sexual advantage of the minor females who were living with him in his home. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). The trial court's determination that Beverly's testimony was more probative than prejudicial is a decision that falls within the zone of reasonable disagreement. We conclude that the trial court's ruling to admit Beverly's testimony was not an abuse of discretion. *See Wheeler v. State*, 67 S.W.3d 879, 888-89 (Tex. Crim. App. 2002). We overrule issue two and affirm the trial court's judgment.

AFFIRMED.