# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00644-CR

---

**Leon Young, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 450TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-15-100069, THE HONORABLE BRAD URRUTIA, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Leon Young of the offense of aggravated sexual assault of a child and assessed punishment at 30 years' imprisonment. *See* Tex. Penal Code § 22.021(a)(1)(B), (2)(B). The district court rendered judgment on the verdict. In five points of error on appeal, Young asserts that the district court abused its discretion by: (1) allowing a forensic interviewer to testify as an outcry witness; (2) allowing the child's mother to testify as an outcry witness; (3) allowing a person in the courtroom to stand during the child's testimony; and (4) not granting a mistrial following the admission of irrelevant testimony. Young also claims that (5) there is a clerical error in the written judgment of conviction. We will affirm the district court's judgment.

## BACKGROUND

Young, a former school bus driver with the Austin Independent School District, was charged with aggravated sexual assault of a child and indecency with a child by sexual contact. The following factual summary is based on evidence that was admitted at Young's trial for those offenses.

During the 2014–2015 school year, two children told their second-grade teachers at Walnut Creek Elementary School that they had observed a bus driver engaging in inappropriate physical contact with another child who rode their bus. The teachers reported to school authorities what the children had told them, and an investigation began. The bus driver was identified as Young, and the child was identified as J.P., who was in kindergarten or first grade at the time.

J.P.'s mother was informed of the allegations by the school principal and a detective, both of whom called the mother to report what they had learned. J.P.'s mother testified that on the same afternoon she received the phone calls, she asked J.P. what had happened, and J.P. told her that Young hugged her and "touche[d] her on her kitty cat in the front and the back and that he rub[bed] her stomach and rub[bed] her back."[1] J.P. also told her mother that Young touched her on the inside of her panties and that he "touche[d] the front and then touche[d] her back and rub[bed] her butthole." J.P.'s mother asked J.P. how long this had been happening. Although J.P. "couldn't be specific on [the] time frame," she told her mother that "it happened so much for a long, long time."

---

[1] The mother testified that "kitty cat" was a term that the family used to refer to a girl's "private area."

2

J.P. was interviewed by Grace Yeager, who was at the time a senior forensic interviewer with the Hill Country Children's Advocacy Center. Yeager testified that J.P. told her that "her bus driver put hi[s] hand in her kitty cat, which she later described as a place on her body that pee comes out of." Yeager also recounted, "She gave me kind of a narrative about the bus driver giving her candy, a circle. She ate it very quickly. She went back up to get some more, that is when he put his hand inside of her pants, inside of her underwear, inside of her vagina." Yeager added that J.P. did not use the word vagina but referred instead to her "kitty cat" and "middle part." Yeager also testified that J.P. indicated to her that this had happened more than one time.

J.P., who was in fourth grade at the time of trial and had moved to Corpus Christi, testified that when she had attended Walnut Creek Elementary School, her bus driver would tell her to hug him and that when she hugged him, he would give her candy and touch the inside of her "middle part" underneath her clothes, using his hand. J.P. also testified that the driver would put his hand inside her "butt."

Detective Alex Phillips of the Austin ISD Police Department interviewed Young during the investigation. Phillips testified that Young acknowledged that "he would hug a child on a regular basis, even though he understood that he shouldn't be doing that," and that he "handed out candy to the students on the bus," including J.P. The interview was recorded, and a copy of the recording was admitted into evidence and played for the jury. Other witnesses at trial included the children who had reported the bus driver to their teachers; J.P.'s brother, who rode the bus with J.P. and had witnessed some of the bus driver's behavior; and school-district employees who had been made aware of the abuse.

3

The jury convicted Young of both aggravated sexual assault of a child and indecency with a child by sexual contact, assessing punishment at 30 years' imprisonment for the assault offense and 15 years' imprisonment for the indecency offense. Prior to sentencing, Young made an oral motion to vacate the indecency conviction on double jeopardy grounds, which the State did not oppose. The district court granted the motion. Young later filed a motion for new trial, which was overruled by operation of law. This appeal followed.

**ANALYSIS**

**Outcry-witness testimony**

In his first and second points of error, Young asserts that the district court abused its discretion in allowing Grace Yeager and J.P.'s mother to testify as outcry witnesses. Specifically, he claims that the statements J.P. made to each witness are unreliable and that Yeager did not testify to "a separate, discrete instance of sexual abuse."

*Governing law*

"Hearsay statements, while generally inadmissible, may be admitted under specific conditions when public policy supports their use, and the circumstances surrounding the making of those statements pedigree their reliability." *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005). Article 38.072 of the Texas Code of Criminal Procedure, also known as the outcry statute, creates a hearsay exception in the prosecution of certain sexual offenses committed against children for the admission of a child's first outcry of sexual abuse to an adult. *See* Tex. Code Crim. Proc. art. 38.072; *Bays v. State*, 396 S.W.3d 580, 581 n.1 (Tex. Crim. App. 2013). "Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the Legislature enacted Article 38.072 to admit

4

the testimony of the first adult a child confides in regarding the abuse." *Martinez*, 178 S.W.3d at 810–11. "This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime." *Id*. at 811.

To be admissible under Article 38.072, among other requirements, "[t]he statement must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernible manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). Thus, "[t]here may be only one outcry witness per event." *Id*. "Hearsay testimony from more than one outcry witness may be admissible under article 38.072 only if the witnesses testify about different events." *Id*.; *see Hernandez v. State*, 973 S.W.2d 787, 789 (Tex. App.—Austin 1998, pet. ref'd). Additionally, the trial court must find, "in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement." Tex. Code Crim. Proc. art. 38.072, § 2(b)(2).

We review a trial court's admission of testimony from an outcry witness under an abuse-of-discretion standard. *See Garcia*, 792 S.W.2d at 92; *Buentello v. State*, 512 S.W.3d 508, 516–17 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd). A trial court has "broad discretion" in determining who qualifies as a proper outcry witness, and we will uphold the trial court's ruling if it is reasonably supported by the record and within the zone of reasonable disagreement. *See Garcia*, 792 S.W.2d at 92; *Buentello*, 512 S.W.3d at 516–17.

### *Separate and discrete instances of abuse*

We first address Young's contention that Yeager did not testify to a separate and discrete instance of abuse so as to qualify as a second outcry witness. Young was charged with

5

two offenses, aggravated sexual assault of a child and indecency with a child by contact. At the hearing on the admissibility of the outcry statements, the district court found that J.P.'s statements to her mother described the offense of indecency with a child by contact, while J.P.'s statements to Yeager described the separate offense of aggravated sexual assault of a child.

The record supports the district court's findings. At the Article 38.072 hearing, J.P.'s mother testified that J.P. told her that Young "rubs the front of her, rubs her back, and then touches her down there and her butthole." Additionally, when J.P.'s mother asked her if Young touched her inside her panties, J.P. told her that Young "puts his hand on [her] kitty cat and he touches [her] down there on the front and touches [her] butthole." When J.P.'s mother asked her "what else happen[ed] on the bus," J.P. told her "that was it. That's all she told me." Thus, J.P.'s statements to her mother were limited to a description of sexual touching or contact. *See* Tex. Penal Code § 21.11(a)(1) (defining offense of indecency with child by sexual contact), (c)(1) (defining "sexual contact" as "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child"). In contrast, Yeager testified at the hearing that J.P. told her of an incident in which Young's fingers were "rubbing inside" and "moving inside of her kitty cat." These statements describe the penetration of J.P.'s sexual organ with Young's fingers, i.e., a sexual assault. *See id*. § 22.021(a) (defining offense of aggravated sexual assault of child). Thus, it was within the zone of reasonable disagreement for the district court to have found that J.P.'s statements to her mother and Yeager were describing separate and discrete acts of abuse and to allow both witnesses to testify.

### Reliability

We next address Young's contention that J.P.'s statements to her mother and Yeager were not reliable. As an initial matter, Young did not object in the court below to the

6

reliability of J.P.'s statements to her mother. Accordingly, Young has failed to preserve for review the reliability of those statements. *See* Tex. R. App. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339–40 (Tex. Crim. App. 2012); *Taylor v. State*, 509 S.W.3d 468, 473–74 (Tex. App.—Austin 2015, pet. ref'd).

As for the statements that J.P. made to Yeager during the forensic interview, we cannot conclude that the district court abused its discretion in finding those statements to be reliable. Yeager testified that she conducted a "multisession forensic interview" with J.P. and met with her on three occasions within a span of one week. During the first and second sessions, J.P. did not provide a statement to Yeager. However, during the third session, J.P. told Yeager "that something happened with her body, with the middle part of her body. And she said it's a little nasty. And she went on to say that when [she] get[s] on the bus, he is always putting his hands in her kitty cat and then [he] got kicked off." When asked to describe what else J.P. had told her, Yeager testified as follows:

> She told me that the kitty cat is used—pee comes out of the kitty cat. She said that she was next to the bus driver when this happened. She was getting candy. She talked about a specific time when she had gotten candy. She finished the candy, she got up to get more candy from him, and then he put his hands underneath her clothes in the front and in the back. She said that his fingers were rubbing inside. And then she pointed to her finger and she said hi[s] hand moving inside of her kitty cat, it felt not good. She said everyone else was sitting down. She said she could hear him breathing. I asked her about the back and she said he put his hand in the back of her clothes. Then she said something to the effect of him always do[ing] this.

Thus, J.P.'s statements to Yeager included terminology that a child would use and contained specific details regarding the abuse. These circumstances are indicative of reliability. *See*

7

*Gonzales v. State*, 477 S.W.3d 475, 479 (Tex. App.—Fort Worth 2015, pet. ref'd); *Norris v. State*, 788 S.W.2d 65, 71 (Tex. App.—Dallas 1990, pet. ref'd).

Young argued at the Article 38.072 hearing that there was a "potential" that J.P.'s mother had "coached" J.P. on what to say during the forensic interview. Some evidence was admitted at the hearing to that effect, but it was minimal. Yeager testified that although J.P.'s mother had "spoken to her about what to say," J.P. "wasn't clear onto what that was." No other testimony indicated what, if anything, J.P.'s mother might have told J.P. before the interview. The district court, in ruling that the outcry was "sufficiently reliable," explained, "I don't know that I saw enough to believe the interview was tainted. With regard to anything such as what the mother may have told her, that's proper evidence to be put before the jury to determine the credibility of those statements that she made to Ms. Yeager at a later time." In other words, to the extent that J.P.'s mother might have spoken with J.P. before the interview, the district court determined that this went to the weight of the evidence rather than its admissibility. On this record, given the "broad discretion" that a trial court has in admitting outcry testimony, we cannot conclude that the district court's ruling on the admissibility of the evidence was outside the zone of reasonable disagreement.[2] *See Sanchez v. State*, 354 S.W.3d 476, 486–89 (Tex. Crim. App. 2011).

We overrule Young's first and second points of error.

---

[2] The district court made its ruling on the admissibility of the outcry statements at a hearing prior to trial. In arguing that the statements were inadmissible, Young relies in part on evidence that was admitted during trial, after the district court had made its ruling. However, our review is limited to the evidence that was before the district court when it made its ruling. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

**Person standing in courtroom during victim's testimony**

In his third point of error, Young asserts that the district court abused its discretion "by allowing a support person to influence the testimony of a child witness by repeatedly standing up in court during the child's testimony." During J.P.'s testimony, defense counsel noticed a person standing in the courtroom. The record reflects that during a bench conference, defense counsel brought this to the district court's attention as follows:

[Defense counsel]:    Judge, why is this lady standing up? That lady right there. Why is she standing up? That's the second time I've caught her standing up. I want her out of the room.

[The court]:    Just a second and we can deal with that.

(Open court)

[The court]:    Ladies and gentlemen of the jury, I'm going to need to excuse you for a few minutes.

(No jury)

. . . .

[Defense counsel]:    I want this person removed from the courtroom. She's continually standing up while the witness is testify[ing] and that's improper.

[The court]:    I think that—are you referring to Ms. Kim?

[Defense counsel]:    I'm not sure what her name is. I just know she is the standing up lady.

[The court]:    Ms. Kim, I think, was standing up so she can better hear or give comfort to the child as we were at the bench during a bench conference. I don't find her behavior to be disruptive to the proceedings or that the jury is even paying attention to her. So, one, I'm not going to remove Ms. Kim from the courtroom. But I will, Ms. Kim, ask you if you

9

|  | could just keep the standing to a minimum, please.  Thank you.[3] |
| --- | --- |
| [Defense counsel]: | Your Honor, if I may for the record, that's the second time she's stood up that I've seen and I'm facing forward. |
| [The court]: | I think I made my ruling, [defense counsel].  I appreciate you making that clear for the record.  Thank you. |

Article 38.074 of the Code of Criminal Procedure provides that "[o]n the motion of any party . . . the court shall . . . allow a support person to be present in close proximity to the child during the child's testimony if the court finds by a preponderance of the evidence that: (1) the child cannot reliably testify without the . . . presence of the support person, as applicable; and (2) granting the motion is not likely to prejudice the trier of fact in evaluating the child's testimony."  Tex. Code Crim. Proc. art. 38.074, § 3(b).  A "support person" means "any person whose presence would contribute to the welfare and well-being of a child."  *Id*. § 1(2).  "A support person who is present during a child's testimony may not: (1) obscure the child from the view of the defendant or the trier of fact; (2) provide the child with an answer to any question asked of the child; or (3) assist or influence the testimony of the child."  *Id*. § 3(c).

Young's specific argument on appeal is that the State failed to file a motion requesting the presence of a support person and that the district court failed to hold a hearing on the matter or make the required findings under Article 38.074.  *See id*. § 3(b).  However, Young did not raise these complaints in the court below.  Instead, he objected solely on the basis that it was improper for the support person to stand while J.P. was testifying.  Because Young's trial objection does not comport with his complaint on appeal, he failed to preserve error, if any, in

---

[3] Other than the district court's above remarks regarding Kim, the record contains no further information as to her identity or the nature of her relationship with the witness.

the district court's failure to comply with the requirements of Article 38.074. *See* Tex. R. App. P. 33.1(a)(1); *Hallmark v. State*, 541 S.W.3d 167, 171 (Tex. Crim. App. 2017) (complaint on appeal must comport with trial objection to preserve error); *Yazdchi v. State*, 428 S.W.3d 831, 844–45 (Tex. Crim. App. 2014) (same); *see also Lambeth v. State*, 523 S.W.3d 244, 247 (Tex. App.—Beaumont 2017, no pet.); *Smith v. State*, 491 S.W.3d 864, 875 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Coronado v. State*, 431 S.W.3d 744, 747–78 (Tex. App.—Amarillo 2014, pet. ref'd).

Additionally, even if Young had preserved error, we could not conclude on this record that the error, if any, harmed Young. The failure to comply with the procedural requirements of Article 38.074 is nonconstitutional error. *See Lambeth*, 523 S.W.3d at 248; *Smith*, 491 S.W.3d at 876–77. Nonconstitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b); *Thomas v. State*, 505 S.W.3d 916, 925 (Tex. Crim. App. 2016). "'A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.'" *Thomas*, 505 S.W.3d at 926 (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). "The proper inquiry is 'whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Id*. (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). "On the other hand, if 'the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.'" *Id*.

Here, the record reflects that defense counsel saw Kim standing on two occasions during J.P.'s testimony, once during a bench conference and once at some unspecified point before that. As the State observes in its brief, the record does not reflect how long Kim was standing on either occasion, where she was standing in relation to the witness, whether she was

standing while the witness was answering questions or only during bench conferences, and the extent to which the jury was aware of her standing. The record also does not reflect how often, if at all, Kim stood after the district court asked her to "keep the standing to a minimum." Additionally, there is nothing in the record to suggest that Kim, in violation of Article 38.074, obscured the child from the view of the defendant or the jury, provided the child with an answer to any question asked of the child, or assisted or influenced the testimony of the child. *See* Tex. Code Crim. Proc. art. 38.074 § 3(c). In short, on this record, we could not conclude that the district court's error, if any, in allowing Kim to stand had a "substantial or injurious" effect or influence in determining the jury's verdict.

We overrule Young's third point of error.

**Motion for mistrial**

One of the State's witnesses at trial was Ylise Janssen, an attorney for the Austin Independent School District. The record reflects that during her testimony, the following occurred:

> Q. Were there cameras on the school buses in the 2014, 2015 school year?
>
> A. On some of the buses there were. Probably the majority of them, but not quite all of them. Some of our older buses and perhaps smaller buses, there may have been some instances where there would not necessarily have been some cameras.
>
> . . . .
>
> Q. Okay. After the 2014, 2015 school year, did Austin ISD make any significant changes to the buses?
>
> A. Yes, ma'am, we did.

12

Q.                      What was that?

A.                      After the incident in question—

[Defense counsel]:    Judge, I'm going to object to that.

[The court]:          Come on up.

(At the Bench, on the record)

[The court]:          What is your objection?

[Defense counsel]:    My objection is that this is highly prejudicial. This is an attorney who knows much better than to say that.

[Prosecutor]:         I'll withdraw the question.

Young then moved for a mistrial, which the district court denied. However, the district court sustained Young's objection to the testimony and instructed the jury to disregard it as follows:

> Any testimony that you heard with regard to whether after the incident, as stated by the witness, cameras were installed or anything like that, you should disregard it. It is not relevant to the proceedings in this case, nor should you consider it in any way to establish guilt or innocence, or allude to it any further in consideration of your verdict. Do you understand? Thank you.

Young again moved for a mistrial, which the district court denied. Janssen provided no further testimony. In his fourth point of error, Young asserts that the district court abused its discretion by denying his motion for mistrial.

"We review a trial court's denial of a mistrial for an abuse of discretion." *Balderas v. State*, 517 S.W.3d 756, 783 (Tex. Crim. App. 2016). "We review the evidence in the light most favorable to the trial court's ruling and consider only those arguments before the court at the time of the ruling." *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). "The trial court's ruling must be upheld if it was within the zone of reasonable disagreement." *Id.*

13

"A mistrial is an appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors." *Id*. "A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "Whether an error requires a mistrial must be determined by the particular facts of the case." *Id*.

An improper question and answer "will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard." *Russeau v. State*, 171 S.W.3d 871, 885 (Tex. Crim. App. 2005); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). It is well established that "[i]n the vast majority of cases in which argument is made or testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused," courts presume "that an instruction to disregard the evidence will be obeyed by the jury." *Ladd*, 3 S.W.3d at 567; *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987); *see Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011); *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). "'This is true except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds.'" *Ladd*, 3 S.W.3d at 567 (quoting *Gardner*, 730 S.W.2d at 696); *see Owens v. State*, 381 S.W.3d 696, 707 (Tex. App.—Texarkana 2012, no pet.).

Here, the testimony to which Young objected was the witness referring to "the incident in question." This testimony was in response to the State asking the witness if the school district had made "any significant changes to the buses" following the 2014–15 school year. It would not have been outside the zone of reasonable disagreement for the district court to

have found that this evidence was not "clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds." The witness did not use inflammatory language to refer to the matter. Moreover, because of Young's objection, the witness did not finish her answer to the question, and the jury was not told what the school district did "after the incident in question." Although the jury might have inferred, based on the previous questions, that the school district's action related to the installation of cameras on school buses, the district court instructed the jury to disregard that information, and we cannot conclude that this is the type of "inflammatory information" that the jury would have been unable to disregard. On this record, we cannot conclude that the district court abused its discretion in denying Young's motion for mistrial.

We overrule Young's fourth point of error.

**Alleged clerical error in written judgment of conviction**

In his fifth point of error, Young asserts that the written judgment of conviction contains a clerical error. Specifically, he claims that the judgment indicates erroneously that Young is to be confined in the "State Jail Division" of TDCJ. However, Young is mistaken. The judgment reflects correctly that Young is to be confined in the "Institutional Division" of TDCJ, which is consistent with the district court's pronouncement of Young's sentence in open court.

We overrule Young's fifth point of error.[4]

---

[4] The State represents in its brief that it has conferred with Young's counsel on this issue and that Young's counsel now agrees that there is no clerical error in the judgment.

15

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Affirmed

Filed:   November 19, 2019

Do Not Publish