# DISSENTING AND CONCURRING OPINION

No. 04-09-00530-CR

Pedro A. **ESCAMILLA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 406th Judicial District Court, Webb County, Texas
Trial Court No. 2008-CRS-777-D4
Honorable Oscar J. Hale, Jr., Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice
Dissenting and Concurring Opinion by:  Steven C. Hilbig, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:  October 13, 2010

Although I agree that the judgment of the trial court should be affirmed, I disagree with the majority that the trial court erred in admitting the testimony of the State's expert America Garza.  I believe the trial court did not abuse it discretion by admitting the testimony because the State's expert's testimony meets the standards for reliability.

## MAJORITY OPINION

Escamilla asserts the trial court abused its discretion in allowing Garza to testify that an anal fissure found on D.A.E., and dilation of the anus within thirty seconds after retraction of the child's buttocks, are symptoms consistent with sexual abuse.  He claims the State failed to

demonstrate the validity of the underlying scientific theory, the technique applying the theory was valid, and that the technique was properly applied by the witness.[1]

The majority concludes the trial court abused its discretion in admitting the testimony concerning the rapid dilation because the State failed to establish "some foundation" for the reliability of Garza's testimony that a rapid dilation was consistent with sexual abuse. Majority opinion at __. The majority appears to ground its decision on Garza's failure to adequately explain the reasoning or methodology used to form her opinion. Majority opinion at __. Although the majority acknowledges Garza testified her opinion was based on the works of Dr. Kellogg and Dr. McCann, it attaches significance to the fact that Garza could not name a specific article or study produced by Dr. Kellogg, or that when referencing an article by Dr. McCann that appeared in *Family Medicine*, Garza could only state it "probably" was published in 2008. I disagree with the majority's analysis of Garza's testimony.

## GARZA'S TESTIMONY

As related by the majority, D.A.E. made an outcry to her mother that she was sexually abused by Escamilla. D.A.E. was examined by Garza, a sexual assault nurse examiner ("SANE"), as part of the investigation into D.A.E.'s complaint. The State called Garza to testify, and Escamilla objected on the grounds she was not qualified and her testimony lacked a reliable basis. A hearing outside the jury's presence took place to determine Garza's qualifications and the reliability of her testimony.

At the hearing, Garza testified she has been licensed by the State of Texas as a registered nurse since 2004, and has been certified as a SANE nurse since 2007. She explained that a SANE nurse receives special training to "perform medical examinations on sexual assault

---

[1] Escamilla provides argument only as to the dilation issue and does not present any argument as to the testimony regarding the fissure. Although not directly addressed by the majority, it appears the majority rejects Escamilla's complaint about the testimony concerning the fissure due to his failure to properly brief this complaint.

patients and to demonstrate what come out [sic] from medical forensic examinations." Garza testified her training as a SANE nurse included sixty-five hours of classes conducted by the Office of the Attorney General where she was taught to differentiate between normal and abnormal findings relating to sexual abuse. As part of her training, she also participated in twenty-four hours of physical examinations with a gynecologist or family nurse practitioner involving pelvic examinations, and twenty-four hours of examinations involving children. Garza also testified she participates in peer reviews with other SANE nurses, which she described as "looking at slides and exchanging information; you know, looking at the normal from the abnormals, and keeping up." Garza explained that every two years she renews her SANE certification, which requires her to complete eight hours of continuing education regarding "a pediatric sexual assault survivor, [and] eight hours of pediatric sexual assault." She is also required to submit ten child sexual assault cases and six adult cases for peer review. Garza estimated that she has conducted "close to 200" SANE exams, of which sixty percent were on children.

Garza testified the protocols accepted in the "scientific community" for conducting a SANE exam include taking a history of the victim, a "head to toe" physical assessment checking for trauma, and a detailed examination of the vaginal and anal area. During the exam Garza looks for bruises and other marks on the body. Garza testified she conducted an examination on D.A.E. using these protocols and in her opinion D.A.E. exhibited physical symptoms consistent with sexual abuse.

When questioned regarding her reasoning or methodology used in reaching her conclusion, Garza explained it was based in part on the rapid dilation of the anus. Garza testified she was familiar with and relied upon Dr. McCann's studies concerning anal dilation as it related

to sexual abuse. Garza testified Dr. McCann is a practicing physician who performs medical diagnosis of sexual abuse in children. Garza stated she learned of his work from an article published in *Family Medicine*, which was probably published in 2008. Garza testified that based on Dr. McCann's studies, sexual abuse is indicated when the victim's anus dilates more than two centimeters in less than thirty seconds, and there is no stool present and no history of constipation. All three criteria were present when she examined D.A.E.

When questioned whether she knew of any studies that confirmed sexual abuse was indicated when the anus dilated rapidly, Garza responded:

> Any studies? I guess — this is how all the SANE nurses practice, you know, based on the research and articles from doctors. And — pretty much, when I go to peer reviews, you know, that's what they stand [sic] — you know, base themselves on.

When challenged as to why she knew a rapid dilation was not normal, Garza responded that it was based of work done by Dr. McCann and Joyce Adams and her own observations. Garza also gave a detailed explanation, complete with a drawing, as to how the anus is stimulated to dilate during the examination and stated that a rapid dilation is not normal. When asked if she knew the number of children that comprised the McCann study, Garza stated that she could not recall and agreed the number of children tested would be important in validating the theory. However, she also stated her observations were based on "close to 200" anal examinations, and rapid dilation occurred in less than 20 of the examinations. Garza acknowledged that rapid anal dilation could be caused by other medical issues. She further testified that her work had been subjected to peer review. When questioned about the "potential error rate," Garza acknowledged that David Chadwick had conducted some studies on the matter, but she did not provide any number as to the error rate. Garza also testified studies indicate that eighty percent "of the time" no trauma will be found. When questioned whether the "technique or theory" used to form the

diagnosis of D.A.E. was generally accepted in the medical community, Garza responded "absolutely." She testified she based her answer on the training she received through the Office of the Attorney General.

At the conclusion of the testimony, Escamilla argued that Garza was not qualified to offer an opinion "in the area of medical diagnosis of sexual abuse," and the State failed to prove the underlying scientific theory was valid. The trial court overruled the objection and found that Garza was qualified as an expert to testify about sexual assault examinations, and her opinion was sufficiently reliable and relevant to assist the jury.

When testifying before the jury, Garza repeated most of her testimony from the earlier hearing. Garza also testified that as to the trauma noted during the anogenital examination, Garza found that D.A.E. had a small bruise to the left side of her anus, mild redness on the labia minor, a healed fissure at the nine o'clock position on the anus, and the anus dilated to two centimeters within seven seconds without the presence of stool. Garza stated that the location of the fissure was not consistent with it being the result of normal causes, such as the passing of a large stool or constipation. Garza testified the direction of the fissure was from the outside toward the inside, and the direction of the fissure was significant because if the fissure was caused by natural causes, the direction of the injury would be from the inside toward the outside. Garza stated the fissure could have been caused by forcible penetration of the anus when it was dry, but agreed it could have been resulted from other causes. Garza also testified that the anus takes no less than thirty seconds to begin dilation in the presence of stool and D.A.E.'s anus dilated two centimeters in seven seconds. She explained a normal anus, when being retracted during an examination, will take a minute to begin dilation. Garza also stated the size of the dilation was significant because the normal anus does not dilate as wide open as D.A.E anus

during the examination.  Garza testified that the rapid dilation and size of the dilation was consistent with being a result of sexual abuse.  In summing up the nurse's opinion, the prosecutor asked:

Q.      Now, in this situation, you have a case where there's a bruise to the left side of the anus.  You have a tear, a fissure — a healed fissure at nine o'clock. You have dilation, and you have it within — at 7 seconds, and you have the size of the dilation at 2 centimeters.  Based on all that, were you able to render an opinion?

A.      (Nodded head up and down)

. . .

Q.      And what is your opinion in regards to your findings?

A.      Due to the findings, they are consistent with sexual abuse.

On cross-examination, Garza testified she based this opinion on the literature prepared by Dr. Nancy D. Kellogg, a doctor at the University of Texas at San Antonio, and studies by Dr. McCann.  Garza acknowledged that Dr. Kellogg's work indicated that other causes of rapid dilation should be considered when evaluating children with anogenital symptoms.  Garza also testified that the dilation alone did not mean, nor was she testifying, that D.A.E. was "definitely sexually abused."  She also stated there were numerous other causes other than sexual abuse that could have produced the rapid dilation.  She also acknowledged Dr. McCann's article states that physical findings often attributed to sexual abuse are present in non-abused children.

### RELIABILITY STANDARD

We review a judge's decision to admit expert testimony under an abuse of discretion standard.  *Ellison v. State*, 201 S.W.3d 714, 723 (Tex. Crim. App. 2006).  The trial court's decision will be affirmed unless it is outside the zone of reasonable disagreement.  *Gallo v. State*, 239 S.W.3d 757, 765 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 2872 (2008).  A reviewing

court must give proper deference to the trial judge's ruling on the admissibility of an expert witness's testimony. *Vela v. State*, 209 S.W.3d 128, 136 (Tex. Crim. App. 2006).

The proponent of expert testimony must demonstrate that the expert is qualified to render the opinion, the opinion is reliable, and the opinion is relevant to the determination of an issue in the case. *Id.* at 131. In determining reliability, the proponent must demonstrate the validity of the underlying scientific theory, the validity of the technique applying the theory, and the technique was properly applied on the occasion in question. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). In *Kelly* the court listed some factors that could affect the trial court's decision include, but are not limited to: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Id.* However, the Court of Criminal Appeals in *Vela* recognized that:

> [E]ven if the traditional *Kelly* reliability factors do not perfectly apply to particular testimony, the proponent is not excused from proving its reliability. As the Texas Supreme Court recognized, "The court in discharging its duty as gatekeeper must determine how the reliability of particular testimony is to be assessed."[2] The reliability inquiry is, thus, a flexible one. In some cases, the reliability of scientific knowledge will be at issue; in others, "the relevant reliability concerns may focus upon personal knowledge or experience."[3] But the proponent must establish some foundation for the reliability of an expert's

---

[2] (*quoting Gammill v. Jack Williams Chevrolet, Inc*, 972 S.W.2d 713, 715 (Tex. 1988)).

[3] (*quoting Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)).

opinion. "Experience alone may provide a sufficient basis for an expert's testimony in some cases, but it cannot do so in every case."[4]

*Vela,* 209 S.W.3d at 134. The trial court should consider the "fit between the expert's testimony and the facts of the case. *Jordan v. State*, 928 S.W.2d 550, 556 (Tex. Crim. App. 1996). Additionally, appellate courts may take judicial notice of other appellate opinions concerning a specific scientific theory in evaluating a trial judge's gatekeeping decision. *Hernandez v. State*, 116 S.W.3d 26, 31 (Tex. Crim. App. 2003).

ANALYSIS

It was within the trial court's discretion to determine Garza's testimony had a reliable basis. Garza provided "some foundation" for the theory linking rapid dilation with possible sexual abuse by testifying about her experience and others factors outlined in *Kelly*. The basis of Garza's opinion was her training, her experience, and published studies and articles. Garza testified she was taught that rapid dilation was an indication of sexual abuse. She stated the theory was accepted in the community involved in the detection of sexual abuse when she discussed her training by the Office of the Attorney General and her peer reviews with other experts including Dr. Kellogg. She also testified that the phenomenon was noted by several authors including Dr. Kellogg and Dr. McCann. Garza also testified she had conducted nearly 200 anal examinations and found rapid dilation in less than twenty cases. This means a rapid dilation occurred in roughly ten percent of her examinations. Accordingly, her testimony that a rapid dilation is not "normal" was based not only on her training and reading of literature in the field, but also on her own experience.

The majority takes issue with the fact that Garza could not identify the names of specific articles written by Dr. McCann and Dr. Kellogg, and could not identify the potential rate of error

---

[4] (*quoting Gammill*, 972 S.W.2d at 726.)

for the methodology. Although these are recognized factors for determining reliability, there is no requirement that every expert's testimony be judged on all seven of the *Kelly* criteria. As discussed above, the reliability inquiry is flexible and the gatekeeper "must determine how the reliability of particular testimony is to be assessed." *Vela*, 209 S.W.3d at 134.

Testimony regarding anal dilation in sexual abuse cases is certainly not novel or new. This court, and many of our sister courts, have referenced rapid dilation of the anus in discussion of the legal or factual sufficiency of a conviction. *See Smith v. State*, Nos. 07-09-0009-CR & 07-09-0010-CR, 2010 WL 2010914, at *3 (Tex. App.—Amarillo May 20, 2010, pet. ref'd) (mem. op., not designated for publication) (immediate dilation of victim's anus cited to support finding of factual sufficiency of the evidence in indecency with child case); *Kachoian v. State*, No. 04-09-00250-CR, 2010 WL 1905002, at *4 (Tex. App.—San Antonio May 12, 2010, no pet.) (mem. op., not designated for publication) (rapid dilation used to support finding of factual sufficiency in aggravated sexual assault case); *Padilla v. State*, 278 S.W.3d 98, 105 (Tex. App.—Texarkana 2009, pet. ref'd) ("rapid dilation" of the victim's anus cited in support of finding evidence legally sufficient in aggravated sexual assault case); *Cramer v. State*, No. 12-08-00061-CR, 2009 WL 4264331, at *4 (Tex. App.—Tyler Nov. 30, 2009, pet. stricken) (mem. op., not designated for publication) ("abnormal" dilation of victim's anus cited in support of legal sufficiency of evidence in aggravated sexual assault case); *In re C.B.*, No. 05-05-00064-CV, 2008 WL 327226, at *2 (Tex. App.—Dallas Feb. 7, 2008, no pet.) (mem. op., not designated for publication) (in prosecution of juvenile for aggravated sexual assault, "immediate" dilation of the complainant's anus cited to support finding of legal and factual sufficiency); *Steinke v. State*, No. 11-04-00072-CR, 2005 WL 3008417, at *4 (Tex. App.—Eastland Nov. 10, 2005, pet. ref'd) (mem. op., not

designated for publication) (dilation of victim's anus within five seconds cited to support finding of factual sufficiency of the evidence in aggravated sexual assault case).

Furthermore, in the context of an expert's qualifications, the Court of Criminal Appeals has applied a sliding scale when addressing the issue of whether an expert is qualified to testify on certain topics. *See Rodgers v. State*, 205 S.W.3d 525, 528 (Tex. Crim. App. 2006). The court has stated that an expert's qualifications are scrutinized less if (1) the area of expertise is less complex and closer to the common understanding of the jury; (2) the expert's opinion is less conclusive; and (3) the testimony is less dispositive of the disputed issues. *Id.* To illustrate this point, the court in *Rodgers* contrasted expert testimony concerning DNA profiling with expert testimony concerning latent-print comparisons such as shoe, tire, or fingerprint. The court noted that DNA testimony is scientifically more complex and removed from the common understanding of the jury, and is often more precise and thus conclusive than latent-print evidence. The court concluded from this comparison that the expert who offered DNA testimony should possess a higher degree of expertise or greater qualifications than an expert who testifies that a particular shoe made the bloody footprint in the victim's apartment. *Id.*

I believe the same reasoning should apply to the issue of reliability. Here, Garza simply testified that the rapid dilation was consistent with the occurrence of sexual abuse, but she acknowledged there were other medical conditions that could have caused the condition to occur. Garza testified that the anus acted abnormally during the examination of D.A.E., but standing alone, the rapid dilation did not conclusively establish that sexual abuse had occurred. This testimony is more akin to the latent print example in *Rodgers* than the DNA testimony. Further, it is not beyond the ken of the average person that trauma to a body part may cause the body part to react different than it would normally, i.e. react "abnormally." In essence, Garza testified that

the anus acted abnormally during the examination of D.A.E.  Given Garza's testimony that she was taught this reaction was consistent with possible sexual abuse, other SANE nurses and experts expressed the same view during peer reviews, literature describing the phenomenon associated with sexual abuse had been published and the theory was accepted within the medical community, and this and other appellate courts have relied on this theory, there was some foundation to support the trial court's determination that the testimony was reliable.  The trial court did not abuse its discretion by admitting the testimony of Garza because there was some foundation for her expert opinion.

Steven C. Hilbig, Justice