**Affirmed and Opinion Filed April 9, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00247-CR

### CARSTEN HEDEMANN, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1434917-R**

## OPINION ON REHEARING

Before Justices Partida-Kipness, Pedersen, III, and Garcia[1]
Opinion by Justice Pedersen, III

The State charged appellant with aggravated sexual assault of a child. He waived a jury and pleaded no contest. The trial court found him guilty and assessed his punishment at thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises eight issues in this Court, challenging the voluntary nature of his plea, the State's failure to produce certain discovery in a timely way, the trial court's rulings concerning his motion for new

---

[1] The Honorable Dennise Garcia succeeded the Honorable Bill Whitehill, a member of the original panel. Justice Garcia has reviewed the briefs and the record before the Court.

trial, and the competence of the complaining witness to testify at trial. In a single cross-point, the State asks us to modify the trial court's judgment to reflect appellant's plea correctly. We modify the judgment to show that appellant pleaded "no contest," and, as modified, we affirm the trial court's judgment.

## Background

The facts and allegations made by the parties are set forth in detail in this Court's Preliminary Opinion on Rehearing. *Hedemann v. State*, No. 05-18-00247-CR, 2019 WL 4386369, at *1 (Tex. App.—Dallas Sept. 13, 2019, no pet.) (the "Preliminary Opinion"). In that opinion, we concluded that appellant had sufficiently presented his motion for new trial to the trial court and should have been afforded a hearing on that motion. *Id.* at *6. We sustained appellant's sixth issue complaining of the trial court's denial of a hearing, abated the appeal, and remanded the case for a hearing on appellant's motion for new trial. *Id.* at *7.

On remand, appellant's trial judge was recused, and the sitting district judge presided at the hearing on the motion for new trial. The new-trial judge heard testimony from appellant's counsel, A.H.'s forensic interviewer, and the Irving police detective who was assigned to the investigation of A.H.'s abuse. We address this testimony where it is relevant to appellant's remaining issues below.

On October 8, 2020, the judge signed her order denying the motion for new trial and setting forth her findings. We permitted appellant to file a supplemental

–2–

brief based on that order. After considering all materials now before us, we affirm the judgment of the trial court.

## Compliance with the State's Discovery Obligations

In his second, third, and fourth issues, appellant argues that the State failed to provide him exculpatory and impeachment evidence in violation of article 39.14 of the Texas Code of Criminal Procedure, the Fourteenth Amendment of the United States Constitution, and article 1 section 19 of the Texas Constitution. The evidence at issue includes a video, in which A.H. was questioned about her having been shown pornography, and two emails between A.H.'s mother ("Mother") and Barbara Banda, A.H.'s counselor.

As a preliminary matter, we conclude that appellant's motion for new trial preserved his complaint that the missing evidence was exculpatory and that the State failed to turn it over in a timely fashion pursuant to the requirements of *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. To show reversible error under *Brady,* a defendant must show that

> (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; [and] (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different.

*Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (citing *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002)). Ultimately, we must assure that the defendant received a fair trial; we reverse a conviction on a *Brady* complaint only if

the evidence at issue "is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

We apply a deferential standard of review to a trial court's findings in ruling on a motion for new trial. *Najar v. State*, ___ S.W.3d ___, No. PD-1049-19, 2021 WL 800768, at *4 (Tex. Crim. App. Mar. 3, 2021). The trial court is the exclusive judge of the credibility of the evidence presented at the new-trial hearing. *Id.* We will reverse the judge's ruling only if we discern an abuse of discretion, that is, if the ruling is arbitrary or unsupported by any reasonable view of the evidence. *Id.*

*The Pornography-Screen Video*

Before trial, the State produced two videos from Bibiana Dominquez's two-day forensic interview of A.H. Neither of these videos addressed whether A.H. had been exposed to pornography. But at trial, Dominquez testified that she did question the child about whether she had been shown pornography; she was certain because she had marked "no" on her interview checklist next to "shown pornography." Dominquez testified that this pornography screening would have occurred after a break in the interview on the second day, but the video from that day was cut off at the break.

The first ground of appellant's motion for new trial stated: "The State failed to provide an alleged third forensic interview video conducted by Bibiana Dominguez." Appellant argued that it was "unclear at this point as to whether there

–4–

is still an outstanding, so called, third forensic video recording" and that a hearing was necessary "to clarify whether the defense ever received all of the forensic interviews in the case."

The new-trial judge found that no third forensic interview took place. She also addressed appellant's counsel's new complaint that there was a missing portion of the second video that was exculpatory and had not been produced. The judge found that the second interview was not fully recorded, through no fault of the interviewer. As a result, the second video "failed to capture" the portion of the second interview during which A.H. was questioned about whether or not she was shown pornography. The judge also found, however, that the interviewer took notes of the entire interview, including references to the unrecorded discussions at the end of the second interview. Those notes reflect that A.H. was questioned about whether she was shown pornography and that she answered "no" to the inquiry. The notes were provided to counsel for the defense in advance of trial.[2] The judge concluded that "there is no merit to issue number one, as raised in the motion for new trial and as raised at the hearing on the motion." We view the evidence in the light most

---

[2] Appellant's counsel testified that the "no" entry in the forensic interviewer's notes did not alert him to the missing video. Regardless, the entry should have alerted him to the fact that the child said she had not been shown pornography; whether it was in writing on a form or recorded on video, this is the inconsistent statement that appellant purportedly wished to use to impeach the child when she testified at trial that her father *had* shown her pornography. Appellant was in possession of the same impeachment tool whether he had the notes or a video.

favorable to the trial court's ruling. *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).

In his supplemental briefing, appellant contends that the prosecutor became aware before trial that a portion of the interview had not been captured on the second video but did not inform the defense of that knowledge. The *Brady* violation, he claims, lies in the prosecutor's failure to share her knowledge that A.H. was forensically interviewed on the subject and that the video did not contain that portion of the interview. But appellant had the interviewer's notes that told him the child had been asked whether she had been shown pornography and that she had responded "no."[3] He had reviewed both videos. Thus, before trial began, counsel for appellant had the knowledge that he charges the prosecutor suppressed: the child had been interviewed about pornography, she had denied being shown pornography, and neither video contained that portion of the interview.

We conclude that a reasonable view of the evidence supports the trial court's findings concerning the missing video. We discern no abuse of discretion in the trial court's ruling concerning the missing portion of the video.

---

[3] Appellant's counsel contends that he could not determine that the "no" response came from A.H. as opposed to Mother or the police investigator. Nothing on the interview form suggests the information came from someone other than the child. The pornography checklist follows immediately after the interviewer's summary of the information shared by the child during the interview.

*The Emails*

Appellants' second ground for his motion for new trial stated that "[m]aterial evidence, two emails favorable to the accused, have been discovered since the trial." In one email, Mother told Banda that A.H. had informed her an incident of the alleged conduct had occurred while Mother was in the house; she called appellant a "monster" for this brazen abuse of their daughter. Mother also relayed A.H.'s confusion regarding good and bad touches when Mother bathed her. And Mother related in some detail her appreciation for training concerning handling child abuse, which she received through a video by Governor Greg Abbott. The second email included Banda's warning to Mother that her emails could be subject to subpoena by appellant.

In his motion, appellant argued that:

> The mother's email to Banda overwhelmingly contradicts the child's limited testimony at trial as to the mother's whereabouts when the crime supposedly occurred. It also provides material and exculpatory evidence of the continuing confusion on the part of the child between a good and bad touch, a sex act and personal hygiene, as well as the competency of the child. (Exhibit references omitted.)

Appellant's counsel was the only witness who testified concerning the emails.[4] The new-trial judge concluded that his testimony failed to prove that the emails were new evidence that was unknown to appellant at the time of trial and failed to show appellant's failure to discover this evidence was not due to want of

---

[4] Appellant subpoenaed Mother for the new-trial hearing, and the record establishes that she was present in the Zoom "waiting room," but appellant did not call her to testify concerning the emails.

due diligence on his part. Indeed, appellant's counsel acknowledged that he received the emails from the State the morning trial began, before appellant entered his plea, as Mother's response to appellant's subpoena duces tecum. When he opened the emails that morning, he saw that one included Banda's warning to Mother concerning the discoverability of emails; counsel was already aware of that communication from Banda's notes, which he had received well before trial. But the second email was in Spanish, and counsel does not speak Spanish. He testified that he did not further review the contents of the emails until days later.

The new-trial judge also concluded that counsel's testimony did not support his contention that the emails were material to issues at trial as *Brady* requires because he failed to prove that earlier production of the emails would have brought about a different outcome of the trial. Counsel testified that the emails provided evidence of a "close debriefing that occur[red] between the mother and the child at or near the time of counseling." He contended that if he had the emails at trial, he could have used them to impeach A.H., apparently about conflicting statements concerning where Mother was when the conduct occurred. He contended further that the emails would have let him show "continuing coordination and debriefing and organizing" occurring between Mother and Banda, which was—he posited—"the way they got the child to say that she saw not only pornography but pornography with 12 year olds."

Again, we review the evidence in the light most favorable to the trial court's ruling. *Colyer*, 428 S.W.3d at 122. We conclude that nothing in the emails supports either (a) a ground for impeachment of A.H. on more than a peripheral matter, or (b) evidence of an illicit conspiracy between Mother and counselor to create false testimony. Instead, a reasonable view of the evidence supports the judge's conclusions concerning the emails. Accordingly, the judge did not abuse her discretion in ruling that the emails were neither newly discovered nor material to the case against appellant.

*Brady Conclusion*

We conclude that the State did not violate its discovery obligations or withhold any process appellant was due under *Brady*. Appellant has not established that the State failed to disclose evidence that was favorable to him and that could have had a reasonable probability of changing the outcome of his trial. *See Pena,* 353 S.W.3d at 809. No conduct by the State in this case undermines our confidence in the fairness or the outcome of appellant's trial. *See Bagley*, 473 U.S. at 678.

We overrule appellant's second, third, and fourth issues.

**Voluntariness of Plea**

In his first issue, appellant contends that his plea of no contest was not freely, knowingly, and voluntarily entered because the State failed to disclose the favorable evidence discussed above. He argues that what we have called the missing evidence was crucial to his case because it provided "much needed ammunition against the

child's credibility and [against] looming testimony about child pornography images found on a household computer." He contends that the missing video questioning about pornography went "to the very heart of the question of guilt" and that the missing emails undermined the credibility of both A.H. and Mother.

At the new-trial hearing, appellant's counsel testified that had the missing evidence been disclosed to him, appellant would not have waived his right to a jury trial and agreed to plead no contest. The new-trial judge was the sole judge of the credibility of this, and all, testimony offered at the hearing. But we know that the judge found the purportedly withheld evidence was not material to the issues at trial, and we have concluded that a reasonable view of the evidence supports that finding.

A guilty or no contest plea must be entered knowingly and voluntarily, and the defendant must have an understanding of the law in relation to the facts surrounding his plea. *See Ex parte Broussard*, 517 S.W.3d 814, 816 (Tex. Crim. App. 2017). "Sufficient awareness of the factual circumstances surrounding a plea, as opposed to complete knowledge, is required when a plea is entered." *Id.* At 817. We have concluded that appellant was aware of the essence of the missing video, i.e., that A.H. had told the forensic interviewer she had not been shown pornography. And the record establishes that appellant knew the essence of one email before trial, i.e., that A.H.'s counselor had warned Mother not to send emails because they could be subpoenaed by appellant. To the extent that appellant was unaware of the contents of the second email containing Mother's communications with Banda, we have

–10–

affirmed the new-trial judge's finding that the communications were not material to issues at trial.

We conclude that appellant possessed sufficient knowledge of the facts surrounding his plea to assure that his plea was knowing and voluntary. *See id.* We overrule his first issue.

In his seventh issue, appellant argues that the trial court erred by failing to withdraw appellant's plea of no contest *sua sponte* because it was not given voluntarily. Appellant contends he was not properly admonished.

The record establishes that appellant was admonished both orally and in writing concerning the effects of his plea. The record establishes further that appellant pleaded no contest in open court and in person. And as to the fact that appellant took the stand and denied his guilt, he could have withdrawn his own plea as a matter of right without assigning a reason until judgment was pronounced or the case had been taken under advisement. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979); *Young v. State*, No. 05-12-01453-CR, 2013 WL 2152001, at *1 (Tex. App.—Dallas May 17, 2013, no pet.) (not designated for publication) (applying *Jackson* to no contest plea). "The appellant not having done so, he may not complain for the first time on appeal that the trial court did not do it for him." *Mendez v. State*, 138 S.W.3d 334, 350 (Tex. Crim. App. 2004).

We overrule appellant's seventh issue.

## Competence of Child Witness

In his eighth issue, appellant argues the trial court erred by determining A.H. was competent to testify at trial. Witnesses are generally presumed to be competent. TEX. R. EVID. 601(a). A child is incompetent to testify only if the court examines her and finds that she lacks sufficient intellect to testify concerning the matters in issue. TEX. R. EVID. 601(a)(2). In such an examination, the trial court considers whether the child witness possesses (1) the ability to observe intelligently the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events. *Torres v. State*, 424 S.W.3d 245, 254 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). We review the trial court's determination of a witness's competency for an abuse of discretion. *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995).

At the competency hearing, the State first questioned A.H. concerning her understanding of truth and falsehood. She was able to identify concrete examples of statements that were true or false, and she promised to tell the truth. She then was able to answer factual questions concerning her age, school, teachers, and best friend. When asked, she was able to recall where her father played the game with her and the sequence in which he undressed her, put his mouth on her "private part," and then had her put her mouth on his. She recalled him showing her a video of a "really big" girl—who she estimated to be twelve years old—doing the "yummies" to her father. She remembered seeing the video on a laptop computer and

remembered appellant telling her not to tell anyone about it. She testified that she told Mother because she knew her mother would protect her and could keep the secret. Finally, she testified that she knew the game had happened more than one time.

Appellant offered the testimony of his expert, Dr. Alexandria Doyle, a licensed psychologist, who had reviewed the child's forensic interviews and counseling notes and Mother's medical records. Doyle did not examine A.H., but she questioned A.H.'s sensory descriptions of the alleged abuse in the forensic interview and opined that what the child described could have been what she saw in a movie. She concluded that A.H. was not competent to testify at trial. Banda also testified at the competency hearing; she stated that she had never had concerns about the child being able to tell the truth or to remember and describe what had happened to her based on her own experience and memory.

The trial court concluded A.H. was competent to testify. We give great deference to the trial judge who was there to evaluate the child and her responses personally. *Escamilla v. State*, 334 S.W.3d 263, 267 (Tex. App.—San Antonio 2010, pet. ref'd). And we independently agree that A.H.'s testimony indicated she possessed sufficient intellect to have observed the acts she identified as a game, to recollect them, and to relate them at trial. Appellant points out inconsistencies between A.H.'s descriptions in the forensic interviews and her trial testimony, but any inconsistencies in her testimony about specific incidents go to her credibility,

–13–

not to her competency to testify. *De Los Santos v. State*, 219 S.W.3d 71, 81 (Tex. App.—San Antonio 2006, no pet.). The trial court did not abuse its discretion in concluding A.H. was competent to testify.

We overrule appellant's eighth issue.

## Modification of Judgment

Finally, the State asks us to modify the trial court's judgment to show that appellant pleaded "no contest" rather than "guilty" to the charged offense. This Court may modify the trial court's judgment to make the record speak the truth when it has the necessary data and information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W. 2d 26, 31 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W. 2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). We modify the judgment to reflect appellant's plea as "no contest."

## Conclusion

As modified, we affirm the trial court's judgment.

/Bill Pedersen, III/
_____
BILL PEDERSEN, III
JUSTICE

180247f.u05
Do Not Publish
TEX. R. APP. P. 47

–14–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CARSTEN HEDEMANN, Appellant

No. 05-18-00247-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas Trial Court Cause No. F-1434917-R. Opinion delivered by Justice Pedersen, III. Justices Partida-Kipness and Garcia participating.

Based on the Court's opinion of this date, we modify the judgment of the trial court to indicate that appellant Carsten Hedemann pleaded "no contest" to the charged offense.

As modified, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of April, 2021.