

# NUMBER 13-23-00195-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

STEVE GOMEZ,                                                            **Appellant,**

**v.**

THE STATE OF TEXAS,                                                    **Appellee.**

## ON APPEAL FROM THE 227TH DISTRICT COURT
## OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION

### Before Justices Benavides, Tijerina, and Silva
### Memorandum Opinion by Justice Benavides

Appellant Steve Gomez appeals his conviction for two counts of super aggravated sexual assault of a child, both first-degree felonies. *See* TEX. PENAL CODE ANN. § 22.021(a), (e), (f)(1). Gomez was sentenced to ninety-nine years' imprisonment on both counts, and the trial court ordered the sentences to run concurrently. By four issues that we have reordered, Gomez contends: (1) the evidence was legally insufficient to support

both convictions; (2) the child complainant was not competent to testify; (3) the State should not have been allowed to develop the child complainant's testimony through leading questions; and (4) the trial court should not have permitted the child complainant to have a support person and comfort item while testifying. We affirm.

## I. BACKGROUND[1]

Anna,[2] the complainant's mother, testified that she would frequently "[p]arty[]" with Gomez, which consisted of "[s]moking meth, using meth, [and] drinking." On December 3, 2019, when Jane, Anna's daughter and the complainant in this case, was five years old, Anna was in the process of moving residences. Anna acknowledged that she used methamphetamine after dropping Jane off at school that day, sometime "[b]etween nine and 11:00 a.m." After Anna picked Jane back up from school, Gomez came over to help Anna pack. Anna testified that Gomez said, "[H]ey, I can take [Jane] to my cousin's birthday party." Anna was initially reluctant, as it was a school night. Anna asked "typical mom questions," like "who's going to be there," and "[w]here is it at?" Gomez assured Anna that "there's going to be kids there and there's a bouncy house." Anna asked Jane whether she wanted to go, and Jane was reportedly "so happy to go" and promised to "be good."

Anna stated that about an hour after Gomez and Jane left for the party, she tried

---

[1] This appeal was transferred to this Court from the Fourth Court of Appeals in San Antonio by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

[2] We have assigned the pseudonym "Jane" to the complainant to protect her privacy. *See* TEX. CONST. art. 1, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"). To further protect her identity, we will refer to Jane's adult sister as "Avery" and their mother as "Anna." *See id.*

calling Gomez and "he didn't answer." Anna followed up with a text message, and Gomez then called her back to let her know that he and Jane were eating at McDonald's because "the food at the party sucked." It was about a ten-minute drive to McDonald's, and "when [Anna] pulled up, they were already standing outside." Anna "noticed . . . that [Jane's] dress was off to the side," but she initially chalked this up to Jane "playing" at the birthday party. Anna also noticed that Jane's "legs were ashy, [and] her arms were ashy." Gomez left in his vehicle, and Jane got in Anna's vehicle and left with Anna, Jane's younger brother, and Anna's friend, "Crystal."

Anna asked Jane about the party, "and that's when [Jane] said it was just a party for me and [Gomez] at the motel." Anna asked, "Well, what happened at the motel? . . . Did you go swimming? Did you watch movies?" Jane "said, No, mom. [Gomez] and I took a bath together." Jane also told Anna, "Mommy, he licked me right here and right here, and I don't like that."[3]

Anna testified that, after this outcry, she quickly arranged to meet with Gomez by suggesting she would provide him with drugs. When they met up, Anna threatened Gomez with a firearm, and her friend Crystal stole his car. Shortly after this detour, Jane and Anna went to the hospital where a forensic examination was conducted.

Jane was eight years old at the time of trial. The State was permitted to lead Jane during her testimony. Jane's adult sister, Avery, was also allowed to be present with her while she was testifying. Partway through Jane's testimony, Gomez requested a competency hearing outside the presence of the jury. After asking Jane several

---

[3] Anna clarified on cross-examination that Jane indicated Gomez licked her in her vaginal area and on her breast.

3

questions, the trial court ultimately determined that she was competent to testify, and trial resumed.

Jane testified that, instead of taking her to a birthday party as anticipated, Gomez drove her to a motel. Upon arrival, Gomez relayed to Jane that he "and his ex-wife got in a fight." Gomez asked Jane to take her clothes off and drew a bath. Gomez got into the bathtub with Jane and washed her back, chest, and private parts. Jane added that Gomez also inserted "[h]is middle finger" in her vagina. Jane explained that Gomez then laid her down on the bed, and he touched her on "[her] breast and [her] butterfly." Jane confirmed that she referred to her vagina as her butterfly. Jane detailed that Gomez "licked" her nipples and her "butterfly." Gomez then inserted his penis in her mouth for a "long" time. Jane testified that, afterwards, she had to dress herself, which is something her mother ordinarily helped with. After this, Gomez took Jane "to McDonald's."

Robert Sailors, a licensed forensic analyst employed by the Bexar County Criminal Investigatory Laboratory, testified that the anal and breast swabs taken from Jane's person during the forensic examination tested positive for the presence of saliva. Additionally, Jane's labial swabs and swabs from her underwear tested positive for the presence of semen. Sailors testified that Gomez could not be excluded as the donor of these foreign biological materials. Sailors specifically testified, "In laymen's terms, it's a match."

Gomez testified in his own defense. Gomez testified that Jane was always happy to see him because the adults in Jane's life were often using drugs whereas Gomez "would always show up with a beer in [his] hand," but did not use drugs. However, Gomez

4

clarified that he "might have done . . . methamphetamine for [Anna] twice." Gomez testified that a gentleman named "Lee" was often around Anna and her children.

Gomez testified that on December 3, 2019, Anna asked him to take Jane with him "nowhere specific" so that she could purchase drugs and get high. Gomez confirmed that he agreed to take Jane to McDonald's but denied ever taking her to a motel. Gomez detailed that during their time at McDonald's, Jane confided in him that Lee was molesting her. Gomez assured Jane that he would "try to get her some help from CPS the next day." Gomez testified that he had to remind Anna to come pick Jane up, and that Jane cried and did not want to leave with Anna.

Gomez denied sexually assaulting Jane. He provided two explanations for why his DNA was found on Jane. First, Gomez testified that he and Anna engaged in a sex act earlier in the day on December 3, 2019. He believed that Anna planted his semen on Jane's person as a means of covering her tracks for later robbing and assaulting him. Second, he also explained that while he and Jane were at McDonald's, Jane asked for his help when she went to the bathroom. Jane "had her shirt off," which Gomez "thought . . . was kind of weird." Gomez testified that Jane's urine "had a smell to it" that "made [him] sneeze." He hypothesized that this was how his saliva was found on her breast.

The jury found Gomez guilty of both counts of super aggravated sexual assault of a child and sentenced him as described above. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first issue, Gomez contends the evidence was legally insufficient to support

his convictions.

## A.     Standard of Review & Applicable Law

"The legal-sufficiency appellate standard of evidentiary review requires the reviewing court to view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Klein v. State*, 273 S.W.3d 297, 302 (Tex. Crim. App. 2008). "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial." *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020).

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Id.* at 856 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (citing *Malik*, 953 S.W.2d at 240). "The law 'authorized by the indictment' consists of the statutory elements of the offense as modified by the indictment allegations." *Id.*

To support the convictions in this case, the State was required to show that Gomez intentionally or knowingly caused Jane's sexual organ to contact his mouth and caused his own sexual organ to contact Jane's mouth at a time when Jane was younger than six years old. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(ii)–(iii), (f)(1).

6

**B.      Analysis**

Gomez argues that without Jane's testimony, which he claims was inadmissible, the evidence was insufficient. Even if this assertion was true, in a legal sufficiency review, "we consider all the evidence, admissible and inadmissible." *Johnson v. State*, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998); *see Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006). In accordance with this principle, we will consider Jane's testimony in our review of the evidence. *See Powell*, 194 S.W.3d at 507; *Johnson*, 967 S.W.2d at 412.

The uncontroverted evidence established that Jane was five years old on December 3, 2019. Jane testified that, on this date, Gomez licked her "butterfly," which she specified was her vagina, and he inserted his penis into her mouth. This alone was sufficient to convict Gomez for both counts of super aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(ii)–(iii), (f)(1); TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1); *Hiatt v. State*, 319 S.W.3d 115, 121 (Tex. App.—San Antonio 2010, pet. ref'd). But Sailors also confirmed that Gomez's saliva was found on swabs taken from Jane's chest and her anus, and his semen was found in her underwear and on her labia. Gomez explained that he may have sneezed on Jane at McDonald's and that he believed Anna planted his semen on Jane to frame him for a crime so she could cover up her own criminal behavior. The jury was well within its discretion to believe Jane's version of events over Gomez's, and we defer to its credibility determination. *See Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) ("A reviewing court is thus 'required to defer to the jury's credibility and weight determinations.'" (quoting *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.)). We conclude the evidence was

7

sufficient to support both of Gomez's convictions.

We overrule Gomez's first issue.

### III.    CHILD COMPLAINANT

By his last three issues, Gomez challenges the trial court's rulings concerning the child complainant's testimony. Specifically, he argues the trial court erred by: (1) determining the child was competent to testify; (2) permitting the State to ask leading questions of the child complainant; and (3) allowing the child to have a support person and comfort item while testifying.

### A.    Competency

#### 1.    Standard of Review & Applicable Law

Generally, every person is presumed competent to testify. TEX. R. EVID. 601(a); *Keller v. State*, 604 S.W.3d 214, 223 (Tex. App.—Dallas 2020, pet. ref'd). However, a child is not competent to testify if the court examines the child and finds that the child "lacks sufficient intellect to testify concerning the matters in issue." TEX. R. EVID. 601(a)(2). "In making a determination of competency to testify[,] a trial court considers (1) the competence of the child to observe intelligently the events in question at the time of the occurrence, (2) the child's capacity to recollect the events, and (3) the child's capacity to narrate the facts." *Escamilla v. State*, 334 S.W.3d 263, 266 (Tex. App.—San Antonio 2010, pet. ref'd). Inconsistencies in a child's testimony about a specific event may impinge on her credibility, but not her competency. *Keller*, 604 S.W.3d at 223.

"We review a trial court's determination that a child witness is competent to testify for an abuse of discretion." *Escamilla*, 334 S.W.3d at 265. "We give great deference to

the trial judge who was there to personally evaluate the child and her responses . . . ." *Id.* at 267. And we review the child's entire testimony to determine whether the trial court abused its discretion. *Id.* at 265.

### 2. Analysis

Gomez argues that the trial court abused its discretion by concluding that Jane was competent to testify. Jane was eight at the time of trial. She was asked about her siblings' ages and confirmed she was the middle child. She testified that she did not like her school, but she did like art and recess. She liked "[g]o[ing] to the park" and playing tag with her brother. She liked "Easter, Halloween[,] and Christmas," because she would get "[a] lot of candy." Jane testified that a lie is "[w]hen you did something wrong and you tell a lie and you blamed it on somebody else." Jane testified that one can get in trouble for lying and that it is better to be truthful, demonstrating an understanding of the moral responsibility to tell the truth. *See De Los Santos v. State*, 219 S.W.3d 71, 81 (Tex. App.—San Antonio 2006, no pet.). The prosecutor asked Jane about her "partner's" hair color, which she specified was red. Jane testified that it would be a lie to say that the partner's hair was black, but she also stated it would be a lie to say that her hair was red. *See Escamilla*, 334 S.W.3d at 266 ("Confusing and inconsistent responses from a child are not reasons to determine she is incompetent to testify; rather, they speak to the credibility of her testimony.").

During the competency hearing, the trial court asked Jane several questions, and Jane mostly nodded in response. For instance, Jane nodded when asked whether she had been able to answer the State's questions on prior occasions. She also agreed with

the judge that she was "just kind of scared to" answer the State's questions.

Jane's answers to the questions posed throughout her testimony displayed an ability, but perhaps a reticence, to intelligently recount the events in question. Jane testified that she had been excited to go to the birthday party. Jane agreed that instead of taking her to a birthday party, Gomez took her to a motel room. Jane remembered that the bathtub was "small," and the bed in the motel was "[a]ll white." Jane testified that Gomez touched her on "[her] breast and [her] butterfly," and that he touched her "[m]outh" with "[h]is private part." Accordingly, Jane's testimony demonstrated that she had the ability to intelligently observe the events in question at the time they transpired and to recollect them later at the time of trial. *See id.*

The trial court was best situated to judge Jane's capabilities and demeanor, and based on the record before us, we conclude that it did not abuse its discretion in determining that Jane was competent to testify. *See id.* at 267. We overrule Gomez's second issue.

## B.    Leading Questions

### 1.    Standard of Review & Applicable Law

"Leading questions should not be used on direct examination except as necessary to develop the witness's testimony." TEX. R. EVID. 611(c). Rule 611 "clearly contemplates that some leading questions are acceptable at the trial court's discretion." *Wyatt v. State*, 23 S.W.3d 18, 28 (Tex. Crim. App. 2000). An "[a]buse of discretion cannot be shown 'unless appellant can show that he was unduly prejudiced by virtue of such questions.'" *Id.* (quoting *Hernandez v. State*, 643 S.W.2d 397, 400 (Tex. Crim. App. 1982)) (cleaned

up). "The asking of leading questions is seldom a ground for reversal (especially where a child is testifying)." *Uhl v. State*, 479 S.W.2d 55, 57 (Tex. Crim. App. 1972); *see Rodriguez v. State*, 997 S.W.2d 640, 643 (Tex. App.—Corpus Christi–Edinburg 1999, no pet.).

Further, a question is not leading simply because it calls for a "yes" or "no" response. *Keller*, 604 S.W.3d at 225; *see Hodges v. State*, 299 S.W. 907, 908 (Tex. Crim. App. 1927) ("A question which calls for the answer yes or no is not . . . necessarily leading . . . ."). Rather, "[l]eading questions are questions that suggest the desired answer, instruct the witness how to answer, or put words into the witness's mouth to be echoed back." *Wheeler v. State*, 433 S.W.3d 650, 655 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd); *see Ballew v. State*, 452 S.W.2d 460, 461 (Tex. Crim. App. 1970) ("If the question asked does not suggest the answer desired it is not a leading question.").

### 2. Analysis

Prior to Jane's testimony, the State asked permission to lead Jane. Defense counsel stated, "I'm hesitant to agree to simply allow the State to lead just as a function of her age. I would ask the Court to examine [her] in a manner consistent with a competency evaluation." Gomez did not request or receive a running objection, and other than this stated hesitancy, Gomez did not express any opposition to the State asking leading questions of Jane. *See* TEX. R. APP. P. 33.1(a); *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) ("[W]ith two exceptions, the law in Texas requires a party to continue to object each time inadmissible evidence is offered.").

However, assuming arguendo that Gomez preserved his objection to the State's leading questions, we nonetheless conclude that no error occurred. Especially when a

child victim is scared to testify, a trial court does not abuse its discretion by allowing the development of the child's testimony through leading questions. *See Keller*, 604 S.W.3d at 225 ("[T]o the extent some of the questions asked were leading, they were necessary to develop the testimony of a scared, child witness."); *Padilla v. State*, 278 S.W.3d 98, 106 (Tex. App.—Texarkana 2009, pet. ref'd) (concluding that it was not an abuse of discretion to allow leading questions of a child that seemed "reluctant to testify about these events in front of a courtroom full of people, that . . . was having trouble remembering the events that had occurred over a year before trial, and that . . . was eventually overcome with emotion during direct examination"); *Clark v. State*, 952 S.W.2d 882, 886 (Tex. App.—Beaumont 1997, no pet.) (considering that the victim "was obviously a troubled young girl" when determining whether the trial court abused its discretion by allowing the State to ask her leading questions).

Jane testified that she was nervous, and during the competency hearing, Jane also confirmed that she was afraid of answering the State's questions. On multiple occasions, the prosecutor had to draw Jane's attention back to her before she was able to get a response to her questions.[4] Prior to her testimony, the State explained to the trial court that Jane was "very nervous about coming in here." And during its closing argument in the punishment phase of trial, the State represented that Jane "was visibly shook" while testifying. Additionally, Jane's testimony was ultimately corroborated by Anna's testimony and by Sailors's. *See Kou v. State*, 536 S.W.3d 535, 541 (Tex. App.—San Antonio 2017, pet. ref'd) ("Generally, the erroneous 'admission of evidence is not reversible error if the

---

[4] For example, at one point the prosecutor queried, "Did he ask you to take your clothes off? [Jane], look at me. You can do this, look at me. Just me. Just me and you. Did he ask you to take your clothes off?"

12

same or similar evidence is admitted without objection at another point in the trial.'" (quoting *Cordero v. State*, 444 S.W.3d 812, 820 (Tex. App.—Beaumont 2014, pet. ref'd)). Given these circumstances, we conclude that the trial court did not abuse its discretion by allowing the State to ask some leading questions of Jane to develop her testimony. *See Keller*, 604 S.W.3d at 225; *Padilla*, 278 S.W.3d at 106; *cf. Trevino v. State*, 783 S.W.2d 731, 733 (Tex. App.—San Antonio 1989, no pet.) (concluding that allowing the State to ask leading questions of a fifteen-year-old victim was not an abuse of discretion where the victim "attended special education classes and had some difficulty communicating in English," had "difficulties . . . with memory recall," and corroborating testimony was elicited elsewhere).

We overrule Gomez's third issue.

## C.    Support Person and Comfort Item

Jane's adult sister, Avery, was present with her at the stand while she was testifying. After the competency hearing, Jane was also permitted some chewing gum, which reportedly helped settle her stomach. Gomez takes issue with both accommodations on appeal.

Article 38.074 of the code of criminal procedure governs the appointment of a support person or comfort item for a testifying child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.074. However, a claim regarding a trial court's ruling on an article 38.074 accommodation is subject to the general rules regarding error preservation. *Lambeth v. State*, 523 S.W.3d 244, 247 (Tex. App.—Beaumont 2017, no pet.); *Smith v. State*, 491 S.W.3d 864, 875 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd); *Coronado v. State*,

431 S.W.3d 744, 747 (Tex. App.—Amarillo 2014, pet. ref'd); *see* TEX. R. APP. P. 33.1(a). Here, Gomez did not object to Avery's presence near Jane until the punishment phase of trial, four days after Jane finished testifying. Gomez specifically objected on the basis that, during Jane's testimony, he and his attorney "were unable to see if the family member of the child complainant was prompting her, was tapping her, [or] was making any sort of indications that assisted her testimony."

"To be timely, a complaint must be made as soon as the grounds for complaint [are] apparent or should be apparent." *Montelongo v. State*, 623 S.W.3d 819, 822 (Tex. Crim. App. 2021). "To avoid forfeiting a complaint on appeal, the party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'" *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). Rather than objecting to Avery's presence at Jane's side prior to or during Jane's testimony—i.e., "at a time when the judge [wa]s in the proper position to do something about it"—Gomez waited four days to object. *See id.* Accordingly, this complaint has not been preserved for our review. *See id.*; *Durkovitz v. State*, 771 S.W.2d 12, 15 (Tex. App.—San Antonio 1989, no pet.) ("An objection which is made after the objected testimony has been received is untimely, and error, if any, is waived."). Further, Gomez made no complaint whatsoever below about Jane's use of chewing gum. Therefore, we conclude this complaint has also been waived. *See* TEX. R. APP. P. 33.1(a); *Pena*, 285 S.W.3d at 464.

We overrule Gomez's final issue.

14

## IV.   CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
9th day of May, 2024.

15